UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RETHINKING CONSULTING SERVICES, LLC<br>         *Plaintiff,*<br><br>v.<br><br>BLUE ORCA SOLUTIONS, INC., and MUSTAFA ARSLAN AURAKZAI<br>         *Defendants*. | Case No. 1:24-cv-01813 |

**COMPLAINT AND
REQUEST FOR INJUNCTIVE RELIEF**

NOW COMES Plaintiff, Rethinking Consulting Services, LLC., ("Plaintiff" or "RTCS" hereafter), by and through undersigned counsel, and moves this Court for judgment and injunctive relief against the above-named Defendants (collectively "Defendants"):

**THE PARTIES**

1. Plaintiff is a Virginia limited liability company with its principal place of business at 4603 Fenimore Place, Alexandria, Virginia 22309.

2. Plaintiff is a company that provides managed information technology and cybersecurity services and consulting.

3. Defendant Blue Orca Solutions Inc. (hereinafter "Defendant Blue Orca") is an Ontario business corporation, with a Principal Office address located in Oakville, Ontario, Canada.

4. Defendant Mustafa Arslan Aurakzai (hereinafter "Defendant Aurakzai") is Defendant Blue Orca's Chief Executive Officer ("CEO") and, upon information and belief, resides in Ontario, Canada.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Count V arises under the laws of the United States and because Counts I-V and VII are so related to Plaintiff's federal claim that they form a part of the same case or controversy.

6. This Court further has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the dispute is between a citizen of one state and citizens of a foreign state. Thus, this Court has subject matter jurisdiction over all of Plaintiff's claims in this action.

7. The defendants are subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3), (A)(4), and § 8.01-328.1(B) of the Code of Virginia, as well as the Due Process Clause of the United States Constitution. The individuals engaged in business in Virginia, agreed by contract to submit to the exclusive jurisdiction of Virginia's state and federal Courts, took actions on behalf of Plaintiff—which has Virginia as a principal place of business—and accessed computer networks and systems located in Virginia. The individual defendants have minimum contacts with Virginia such that the exercise of personal jurisdiction over the individual defendants comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

8. The Court has further jurisdiction pursuant to the terms of a Non-Disclosure Agreement ("NDA") between the Parties, whereby the Parties agreed that all disputes under the NDA would be brought in the United States District Courts located in Virginia and submitted to the exclusive personal jurisdiction of such courts.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendants occurred in Alexandria, Virginia.

## STATEMENT OF FACTS

10. Plaintiff retained Defendants Blue Orca and Defendant Aurakzai for business development services and for work as an IT vendor for their clients on June 1, 2023.

11. For purposes of performing the services they were hired for, Defendants were provided with sensitive and confidential company data, including development and marketing processes, plans and strategies, pricing models, customer information, and existing and potential business opportunities.

12. On June 1, 2023, Plaintiff and Defendants signed a Nondisclosure Agreement ("NDA) which included, among other things, an obligation to refrain from using Plaintiff's confidential information for anything other than performance of services as directed by Plaintiff.

13. In Section 2 of the NDA, confidential information ("Confidential Information") is defined as "includ[ing], but not limited to, information relating to research, products, software, services, development, inventions, processes, engineering, marketing, techniques, Contractors, pricing, internal procedures, business and marketing plans or strategies, finances, employees and business opportunities disclosed by the Disclosing Party to [Defendants] either directly or indirectly in any form whatsoever (including, but not limited to, in writing, in machine readable or other tangible form, orally or visually): (i) that has been marked as confidential; (ii) whose confidential nature has been made known by Disclosing Party, orally or in writing, to [Defendants]; or (iii) that due to its character and nature, a reasonable person under like circumstances would treat as confidential."

14. In Section 4 of the NDA, Defendants agreed "not to use the Confidential Information for its own use or for any purposes except those purposes expressly set forth above. [Defendants] shall not use the Confidential Information for purposes of unfair or improper competition. [Defendants] agree not to copy, alter, modify, disassemble, reverse engineer or decompile any of the materials unless permitted in writing by the Disclosing Party."

15. The NDA further provides for payment of attorneys' fees and all costs of proceedings incurred in enforcing the NDA to the prevailing party.

16. Plaintiff's pricing models and customer lists, among other sensitive information, were understood by all parties as Plaintiff's confidential information.

17. From at least June 2023 to June 2024, Defendants represented to Plaintiff they would provide services to develop leads for additional business as well as maintain and support existing customer relationships.

18. Plaintiff provided the Confidential Information to Defendants for purposes of facilitating the services Defendants represented they would engage in.

19. Plaintiff paid Defendants for their services as represented.

20. In addition to the customers Defendants communicated with as directed by Plaintiff, Defendants contacted Plaintiff's customers that were not a part of their assigned projects.

21. Defendants would not have been aware of any of these customers as potential business nor had access to Plaintiff's other Confidential Information had they not been given access to this information by Plaintiff for purposes of their performance of services for Plaintiff.

22. In the course of Defendants' communications with these customers, they solicited the customers to abandon their relationship with Plaintiff and employ Defendant Blue Orca

instead, while simultaneously representing to Plaintiff that Defendants were developing business leads for Plaintiff.  Instead, Defendants were developing their own leads and directing business away from Plaintiff while simultaneously accepting payments from Plaintiff.  Specifically, in or about March 2024, Defendants solicited Victoria Hagan Interiors, Plaintiff's former client, not to renew their three-year contract with Plaintiff and to instead employ Defendants.  In or around the same timeframe, Defendants solicited Kirby Risk, a former client of Plaintiff's, and actively diverted them from entering into a new engagement with Plaintiff.

23. At times, Defendants falsely represented their relationship with Plaintiff, and falsely represented that certain services were being provided by Plaintiff, when Defendants were instead performing these services on their own.

24. Plaintiff's lost clients include, but are not limited to, Victoria Hagan Interiors, who opted not to renew a three-year contract with Plaintiff, in addition to Kirby Risk, who opted not to work with Plaintiff at the behest of Defendants.

25. Defendants used Plaintiff's pricing models as well as other confidential information to construct their offers of Defendant Blue Orca's services to these clients and prospective clients.

26. Defendants took advantage of their positions and used Plaintiff's Confidential Information for their own benefit in violation of the NDA.

27. As a result of Defendants' misconduct, Plaintiff has suffered significant damages and harm.  This includes, but is not limited to, financial harm as a result of lost contracts and reputational harm.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT**</u>

28. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated

herein.

29. Defendants signed a binding nondisclosure agreement with Plaintiff on June 1, 2024, which created, among others, an obligation for Defendants to "not use [RTSC] Confidential Information for purposes of unfair or improper competition."

30. On multiple occasions, Defendants communicated with Plaintiff's clients, offering them services under terms that clearly reflected the reference and use of Plaintiff's pricing models and other Confidential Information in the creation of such terms.

31. Through these communications, Defendants used Plaintiff's Confidential Information to compete with Plaintiff unfairly and improperly, and to use the Confidential Information for purposes other than Defendants' services for Plaintiff.

32. These actions directly violated the NDA Defendants signed with Plaintiff.

33. As a direct, proximate, and reasonably foreseeable result of Defendants' willful, intentional, and malicious actions, Plaintiff has suffered disruption to its business activities, termination of business relationships, financial harm, damages in an amount to be proven at trial, and harm to its brand and reputation.

## COUNT II
## COMMON LAW TRADE SECRETS MISAPPROPRIATION

34. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated herein.

35. Plaintiff's customer lists, marketing strategies, and pricing models, among other Confidential Information, are trade secrets. Plaintiff took reasonable efforts through the NDA to maintain their secrecy, and Plaintiff derives independent economic value and competitive advantage from this information not being generally known or readily ascertainable.

36. Defendants knew at the time of the NDA and time of use of the information that

Plaintiff's customer lists, pricing models, marketing strategies, and other business practices were Plaintiff's trade secrets.

37. Defendants were bound to a duty to maintain secrecy and limit the use of the information both as Plaintiff's independent contractors as well as parties to the NDA.

38. Defendants' used Plaintiffs trade secrets in a capacity beyond the scope of Plaintiff's consent, to Plaintiff's detriment. Specifically, Defendants referenced pricing models and customer lists, among other information, to target specific customers and offer them pricing reasonably likely to convince the customers to terminate relationships with Plaintiff and hire Defendants.

39. Plaintiff took reasonable efforts to maintain the secrecy of their trade secrets, including but not limited to by negotiating an NDA with Defendants.

40. As a direct, proximate, and reasonably foreseeable result of Defendants' wrongful misappropriation of these trade secrets, Plaintiff has endured significant hardship including but not limited to disruption to its business activities termination of business relationships, financial harm, damages in an amount to be proven at trial, and harm to its reputation.

## COUNT III
## VIOLATION OF VIRGINIA UNIFORM TRADE SECRETS ACT

41. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated herein.

42. Plaintiff's customer lists, marketing strategies, and pricing models, among other Confidential Information, are trade secrets. Plaintiff took reasonable efforts through the NDA to maintain their secrecy, and Plaintiff derives independent economic value from this information not being generally known or readily ascertainable.

43. Defendants knew at the time of contract and time of use of this information that

they were Plaintiff's trade secrets.

44. Defendants were bound to a duty to maintain secrecy and limit the use of the information both as Plaintiff's independent contractors as well as parties to the NDA.

45. Defendants used Plaintiffs trade secrets in a capacity beyond the scope of Plaintiff''s consent, to Plaintiff's detriment. Specifically, Defendants referenced pricing models and customer lists, among other information, to target specific customers and offer them pricing reasonably likely to convince the customers to terminate relationships with Plaintiff and hire Defendants.

46. Plaintiff took reasonable efforts to maintain the secrecy of the trade secrets, including but not limited to by negotiating an NDA with Defendants.

47. As a direct, proximate, and reasonably foreseeable result of Defendants' wrongful misappropriation of these trade secrets, Plaintiff has endured significant hardship including disruption to its business activities, termination of business relationships, financial harm, damages in an amount to be proven at trial, and harm to its reputation.

## COUNT IV
## VIOLATION OF THE DEFEND TRADE SECRETS ACT

48. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated herein.

49. Plaintiff is a national company with customers in multiple states.

50. Plaintiff's customer lists, marketing strategies, and pricing models, among other Confidential Information, are trade secrets. Plaintiff took reasonable efforts through the NDA to maintain their secrecy, and Plaintiff derives independent economic value from this information not being generally known.

51. Defendants were bound by a duty to maintain secrecy and limit the use of the

information.

52. Defendants used Plaintiffs' trade secrets in a capacity beyond the scope of Plaintiff's consent, to Plaintiff's detriment. Specifically, Defendants referenced pricing models and customer lists, among other information, to target specific customers and offer them pricing reasonably likely to convince the customers to both terminate their relationships with Plaintiff and hire Defendants.

53. Plaintiff took reasonable efforts to maintain the secrecy of the trade secrets, including but not limited to by negotiating an NDA with Defendants.

54. As a direct, proximate, and reasonably foreseeable result of Defendants' wrongful misappropriation of these trade secrets, Plaintiff has endured significant hardship including disruption to its business activities, termination of business relationships, financial harm, damages in an amount to be proven at trial, and harm to its reputation.

## COUNT V
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

55. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated herein.

56. Defendants willfully, intentionally, and maliciously acted to injure Plaintiff's business, in that Defendants have used Plaintiff's confidential information to interfere with their business relationship with their customers, in particular Victoria Hagan Interiors and Kirby Risk, among others.

57. Plaintiff had a three-year contract with Victoria Hagan Interiors, which was terminated at the behest of Defendants. Victoria Hagan Interiors' decision not to renew their contract with Plaintiff was a direct result Defendants' tortious interference, in which they improperly used Plaintiff's confidential information, including but not limited to pricing models

and customer lists, to solicit Victoria Hagan Interiors' business.

58. Kirby Risk had a contract with Plaintiff, which was terminated at the behest of Defendants. Upon information and belief, Kirby Risk has hired Defendants instead as a direct result of their communication with Defendants, in which they improperly used Plaintiff's confidential information to solicit the customer's business.

59. Upon information and belief, additional customers have similarly hired Defendant rather than Plaintiff as a direct result of their communication during Defendants course of business on behalf of Plaintiff.

60. Defendants used improper methods, both through the breach of their fiduciary duty of loyalty to the Plaintiff as well as their misuse of the Confidential Information, to interfere with Plaintiff's business relationships.

61. When Defendants improperly used Plaintiff's pricing models and customers lists to interfere with Plaintiff's contracts and business relationships, Defendants were aware of these contracts and business relationships.

62. As a direct, proximate, and reasonably foreseeable result of Defendants' wrongful actions, Plaintiff has endured significant hardship including disruption to its business activities, termination of its business relationships, financial harm, damages in an amount to be proven at trial, and harm to its brand and reputation.

## COUNT VI
## FRAUD

63. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated herein.

64. For the duration of their contract with Plaintiff, Defendants misrepresented to Plaintiff that they had been developing business leads and aiding Plaintiff in maintaining its

relationship with its customers. In reality, Defendants were using information gained through their business relationship with Plaintiff for Defendants' own benefit, while accepting payment from Plaintiff.

65. Defendants intended to mislead Plaintiff, in that Defendants wanted to maintain access to Plaintiff's Confidential Information to develop leads for themselves and to continue receiving payments from Plaintiff.

66. Plaintiff justifiably relied upon these representations to increase business, to create assessments of their reputation, brand, and relationship with their customers, and to make further monetary and business decisions.

67. Defendants intentionally and knowingly worked to deprive Plaintiff of their customer relationships, business revenue, and reputation, despite representing the opposite to Plaintiff and receiving payment in expectation of those representations.

68. As a direct, proximate, and reasonably foreseeable result of Defendants' false representations, Plaintiff has endured disruption to business activities, termination of business relationships, financial harm, damages in an amount to be proven at trial, and harm to its brand and reputation.

## COUNT VII
## BREACH OF FIDUCIARY DUTY

69. Plaintiff hereby incorporates by reference paragraphs 1-27 as if fully restated herein.

70. Defendant Aurakzai owed duties of loyalty and care to Plaintiff by virtue of his relationship with Plaintiff.

71. Defendants have breached their duties of loyalty and care to Plaintiff when they used Plaintiff's confidential information, including pricing models, marketing strategies, and

customer lists, to re-direct Plaintiff's clients to Defendants for their own benefit.

72. As a direct, proximate, and reasonably foreseeable result of Defendants' wrongful actions and their breaches of duties owed to Plaintiff, Plaintiff has endured significant hardship including disruption to its business activities, termination of business relationships, the injury of diverted funds, financial harm, and harm to its brand and reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A. Enter a temporary restraining order, preliminary injunction, and permanent injunction against Defendants, as well as any participants in active concert or participation with them, permanently enjoining them from:

1. accessing Plaintiff's accounts or information belonging to Plaintiff they may have access to;

2. engaging in any and all activity alleged herein, any acts causing any of the injuries complained of, and any acts assisting any other person or entity in engaging in or performing any of the activity complained of herein or from causing any of the injuries complained of herein;

3. using Plaintiff's Confidential Information;

4. doing business with any of Plaintiff's current clients or clients who were Plaintiff's client's during Defendants' engagement with Plaintiff;

5. holding themselves out as providing services or goods on behalf of Plaintiff;

6. making any false or misleading statements regarding Plaintiff or its services;

       7.    engaging in any acts constituting unfair competition with Plaintiff;

       8.    assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (1) and (7);

B.    Award Plaintiff monetary relief, in an amount to be proven at trial, including;

       1.    All profits that Defendants made from Plaintiff's clients;

       2.    All profits received by Defendants from sales and revenues of any kind made as a result of their unlawful acts;

       3.    Exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

       4.    Attorneys' fees and costs pursuant to the terms of the NDA;

       5.    Compensatory damages in an amount to be proven at trial;

       6.    All other available statutory, compensatory, and exemplary damages, attorney's fees, and costs;

       7.    Costs expended herein; and

C.    Grant Plaintiff any and all other all other relief that the Court may deem proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues so triable.

                              Respectfully Submitted,

                              Rethinking Consulting Services, Inc.
                              *By Counsel*

/s/ Alexander P. Faig
Alexander P. Faig
Moore, Christoff & Siddiqui
Alexander P. Faig, Esq. (VSB No. 96248)

526 King St., Suite 506
Alexandria, VA 22314
Email: afaig@moorechristoff.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for Plaintiff*